IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Ex Parte
FREDERICK W. BAUER,
      Petitioner,

v.

United States, DOJ, Att. Gen.,
Federal Pension Funds, et al.,
      Respondent(s).

No. 03-12576-WGY
Writ of Habeas Corpus
Ancillary No. 04-1185(1st Cir.)

Affirmed true and correct.
JUDICIAL NOTICE

## MOTION FOR BAIL

Petitioner ["Bauer" (aka "Shithead")] is wrongfully imprisoned, at least, in violation of Argersinger v. Hamlin, 407 U.S. 25, 40-42, et al, (1972); Scott v. Illinois, 440 U.S. 367, et al (1979); Alabama v. Shelton, 535 U.S. ___, 152 LEd 2d 888, 122 S.Ct. ___ (2002); U.S. v. Sawaya, 486 F.2d 890, 892 (1st Cir. 1973); U.S. v. Foster, 904 F.2d 20, 21-22 (9th Cir. 1990) and; U.S. v. White, 529 F.2d 1390, 1394, footnote 4 (8th Cir. 1976), for starters.

Petitioner was wrongfully convicted as engineered by the FBI, supposedly "authorized from Washington" (FBI under oath). [e.g., of modus operandi see Idaho v. Horiuchi, 253 F.3d 359, 361 (9th Cir. 2001)]. Petitioner was denied counsel and due process of law, in the lease, and therefore he was prevented from preparing or presenting a defense (including "innocence" [trial transcript] and thus he was rendered ineffective by the decisions of a lowly Magistrate. This was no accident, but all preplanned by ... them as an extensive record and program of denial and cover-up over 15-years will validate.

Petitioner had retained two attorneys in the first of back to back prosecutions, first a tax prosecution based on the same offense conduct [26 USC § 7206(1)], No. 88-CR-055-C(Crabb), W.D. Wisconsin, but due

to political influence and intimidations they abandoned the case prior to conviction. Had they taken a direct appeal as requested by their client (computer form provided, "It's too late"), direct appeal would have been in process at the time of the planned, orchestrated denial of counsel, within the Bureau of Prisons (FCI-Oxford; FCI-Sandstone, an FBI facility), prior to the second indictment/prosecution, No. 89-CR-095-C. See Grady v. Corbin, 495 U.S. 508 (1990).

Appellant had been released on bail (his signature) in the tax case, was allowed to leave the United States jurisdiction twice, traveling to foreign on business, once without extradition waiver. He was a resident of California, prosecuted in Wisconsin for the "greatest deterrent value" according to the IRS. A prosecution in 1988 which began with a criminal—turned civil—IRS (CID) investigation in 1980-81. A criminal prosecution brought off the record in U.S. Tax Court (July, 1985), a civil (titled) trial, where the government ("Commissioner") attempted and "utterly" failed to prove tax fraud or involvement in drug smuggling, as affirmed on appeal in October '87. Counsel had also abandoned this direct appeal due to the same political intimidations ["They want to put you in prison for life" (1987)]. Due to counsel abandonment in the criminal tax case, because of their secret knowledge of the planned second prosecution, Bauer was left with no known option but to plead guilty to the tax charge (1981), Count I of two, as contradicted by the prior Tax Court record, [U.S. Tax Ct. No. 1987-190, Boston, MA], based on actual innocence.

Appellant was allowed to voluntarily surrender to FPC-Duluth

on February 20, 1989. He has been imprisoned under selective, vindictive, retaliatory, and harassing conditions since, due to the government's political agenda and expensive program of denial and cover-up. At sentencing in the tax case he was given the maximum sentence allowed by statute, 3 years imprisonment and a $5,000 fine, based on the judge being "convinced" that Bauer was involved in "drug smuggling." According to the Judgment Order, he is neither "a flight risk" or "danger to the community" (January 30, 1989). On August 2, 1989 he was (sealed) indicted for drug conspiracy (1981-1988) spanning the 8 years, including 13 counts of overt acts between 1984 and 1987. Without counsel, he was found guilty on only 10 of 14 counts, sentenced, as stacked, to 25 years for the old law overt acts and 30 years imprisonment for the conspiracy (Ct. 14), plus a $250,000 fine, running concurrent also with the 3-year tax sentence.

The 30-year sentence was under the guidelines without parole as was planned by federal prosecutors and FBI in Wisconsin after rehearsals with the IRS over many years. Actually it was a life sentence downward departed to 30 years under the ruse of disparity in sentence between his 30-year life sentence and that of co-defendants who provided the only evidence/testimony of drug quantities for the 9 overt acts found guilty of between June 1984 and June 1986. This as choreographed by the FBI while allowing these same co-defendants, as a reward for their perjured testimony, to plead guilty to old law parolable sentences of, from one to four years. Their sentences were then withheld pending their testimony at trial. Appellant was also denied the assistance

of counsel at sentencing on 4/12/90, some 8 months after indictment. After trial he had been shipped to MCC-Chicago without his legal materials so as to further obstruct his due process preparations for sentencing; due process necessary to effectively defend against additional orchestrations of the sentence process for obstruction of justice as engineered by the FBI in county jails utilizing additional informants. See Case No. MJG-94-910, Dist. of Maryland, Appeal No. 98-6499 (4th Cir.) (stalled in federal courts due to political influence thereon so as to further obstruct and avoid the <u>merits</u>.).

Appellant had to petition by mandamus (90-1840) to the U.S. Supreme Court to compel the 7th Circuit to appoint counsel and grant IFP on direct appeal from the drug case after months of stalling by political influence. Throughout this process he was continually harassed and psychologically coerced by the BOP and FBI at the FBI's facility—FCI Sandstone. This utilizing additional informant(s).*

Counsel was subsequently appointed some 10 months later and the record will show that they were intentionally ineffective so as to allow the Court of Appeals to affirm the charade in their Kangaroo Court below (witnessed by private parties at oral arguments).

Furthermore, a motion for rehearing was subverted, on new findings, as a result of fraud in the Court of Appeals engineered

---

* Verifiable by Dr. Anthony, Chief Psychologist at Sandstone, who was one of the informants handlers and supervisor, and by William Gaede - counselor, Lt. Mike Moore, <u>et al.</u> (see Case No. C 02-4258, Northern District of California).

by federal prosecutors, the FBI, and at least court clerks in collusion. In the wee hours of the morning, Appellant was put on the bus by the BOP, his legal materials rifled, some destroyed, and for the next 3-4 weeks he was incommunicado by their "diesel therapy." Counsel thereafter abandoned the case.

Appellant has been subjected to the confines of segregation, for 4 times in two years while at FCI-Waseca, being denied access to his research materials, legal books and legal files, etc., so as to further obstruct his effectiveness and due process. He is further subject to continuing harassment and retaliations so as to obstruct his process; well-known modus operandi of the BOP, FBI, et al., and employing of their superior resources, influence, and complicity with federal entities to deny and cover-up. See Wilson, 289 F.Supp.2d 801 (S.D. Tex. 2003).   EXHIBIT A

Appellant's case histories involve fundamental, structural, constitutional, and jurisdictional facts, law, and grounds for relief off extensive records denied to him by the BOP et al. This based on at least exceptional and extraordinary circumstances warranting unconditional release from imprisonment if not released to his signature, as precedent. A miscarriage of justice, denied to the death. See Exhibit J1-10 in pending Notice of Interlocutory Appeal.

## MEMORANDUM OF LAW IN SUPPORT

It has been held that the appellate court may admit a petitioner to bail pending determination of bail under statutes providing generally for bail. See Hensley v. Municipal Court, 411 U.S. 345 et al., on remand (ND Calif) 365 F.Supp. 373, affd.,

518 F.2d 883 (9th Cir. 1975). In re Johnson, __ U.S. __, 96 L.Ed. 1377, 72 S.Ct. 1028 (196_).

In the civil Bivens action in the District of Maryland (see page 4 herein) the District Judge made this statement in an order of May 17, 1994:

> "First, this court will not presume that the Wisconsin court will fail to consider plaintiff's claim. Furthermore, the relief plaintiff seeks by way of his Bivens action, if granted, would necessarily affect the length or duration of his confinement."

The Wisconsin court has failed to consider the claims (fundamental) as they maintained "willful blind eyes" to the engineering that took place therein by their fellow federal compatriots in the FBI, and prosecutors offices maintained in the same building. They had the female trial judge on the rack.

Rule 48, F.R.A.P. provides a court of appeals with the power to appoint a special master to conduct factfinding on ancillary matters. If there is any doubt on the fundamental, substantial nature of the facts herein, then a special master shall be appointed to warrant, in the least, release on bail, or hearing.

The wholesale denial of counsel at trial and sentencing "overcomes the presumption of regularity," warranting release, at least, on bail. Walker v. Johnson, 312 U.S. 275, et al. (1941); White v. Pescor, 155 F.2d 902 (8th Cir. 1946) (unavailable).

The direct appeal of the conviction is a massive fraud as choreographed in Bauer v. USA, 956 F.2d 693 (7th Cir. 1992). "Appeal from a conviction after an uncounseled trial is not likely to be of much help to a defendant since the die is usually cast when judgment is entered on an uncounseled trial record."

<u>Argersinger v. Hamlin</u>, 407 U.S. 25, 41-42, <u>et al.</u> (1972); <u>White</u>, 529 F.2d 1390, 1394, fn 4 (8th Cir. 1976)("However, on direct appeal we are unwilling to affirm the imposition of a suspended prison sentence since the possibility exists of its ripening into unconstitutional imprisonment").

In order for the presumption of correctness to come into play at all, there must be some full and adequate record and findings of the lower court available for admission to the federal court. <u>Baines v. Swenson</u>, 384 F.2d 621, 623 fn 3 (8th Cir. 1967). [e.g., § 2255 "inadequate and ineffective"]

Although not explicitly authorized by statute or rule, judges have **inherent power** in habeas corpus to admit applicants to bail pending the decision. <u>F.R.App.P. 23(b)(C)</u>, <u>Bliss v. Lockhart</u>, 891 F.2d 1335, 1337 (8th Cir. 1989); <u>Martin v. Solem</u>, 801 F.2d 324, 329 (8th Cir. 1986). The inherent power derives from the power to issue the writ itself, and thereby regulate the government's exercise of custody over its citizens; <u>Reiff v. U.S.</u>, 288 F.2d 887, 888 (9th Cir. 1961)("exceptional circumstances"); <u>Aronson v. May</u>, 85 S.Ct. 3, 5 (1964)(Douglas, Circuit Justice, in chambers) ("substantial questions"); <u>Ostrer v. U.S.</u>, 584 F.2d 594, 596 n.1 (2nd Cir. 1978)(petitioner seriously "contest[s] the legality of his custody"); <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776-79 (1987) (petition raises significant issues of constitutional dimension pending appeal); <u>La France v. Bohlinger</u>, 487 F.2d 506, 507 (1st Cir. 1973)(mem.), cert denied, 419 U.S. 1080 (1974)(release pending appeal approved because petitioner "had served much, possibly most of his sentence," and "requiring him to serve...more...would

be too harsh"); Nickerson v. Roe, 2000 WL 33381022(a) *3 (N.D. Calif. Dec. 11, 2000)(granting request for release on bail because of, inter alia, "dilatory pace of these proceedings"); Aronson v. May, supra, 85 S.Ct. @ 4 (whether bail is necessary in the "interests of justice"); cf Baker v. Sard, 420 F.2d 1342 @ 1343-44 (D.C. Cir. 1969)(per curiam)("likelihood of success" itself may supply "forceful special circumstance").

In Bliss, supra, 891 F.2d 1335, 1337 (8th Cir. 1989) the district court held a hearing to enable petitioner to establish prerequisites to bail pending final resolution of petition in district court.

Denial of bail is reviewable via mandamus under the All Writs Act, 28 USC § 1651(a). U.S. v. DiRusso, 548 F.2d 372, 374 (1st Cir. 1976). Denial of bail is appealable, as is the granting, on habeas corpus under the Collateral Order Doctrine. Lee v. Jabe, 989 F.2d 869, 870-71 (6th Cir. 1993). Therefore, collateral to the issue of guilt or innocence and thus jurisdiction of the subject matter. Appellant is imprisoned involuntarily in the 8th Cir. The district judge summarily dismissed disregarding liberal construction, the obstructions of due process, and fundamental/constitutional grounds alleging lack of jurisdiction. (D. Mass.) Frank v. Magnum, 237 U.S. 309, et al., (1915)(therein the high court equated the lack of jurisdiction with a kangaroo court).

Petitioner is imprisoned contrary to the law and procedural gimmicks of all sorts are being utilized to avoid addressing fundamental constitutional grounds based on exceptional circumstances of government fraud on the whole process; a fraud they vehemently deny

utilizing superior resources and power, along with secret communications.

**THEREFORE,** unconditional release or on his signature as prior to imprisonment is warranted due to the "dilatory pace of the proceedings" by expensive procedural morass; inability to prosecute his fundamental grounds from the confines of federal prison due to continuing obstructions so as to render him ineffective on his own without counsel, lack of financial and legal resources available from federal prison due to continuing restrictions, obstructions, encumbrances, and intentional interference.

The complex facts in support of this motion warrant a hearing, if in question, with specialized counsel.

Petitioner is waiting for a briefing schedule in this petition for habeas corpus, pursuant to his pending interlocutory appeal.

<u>Bail is warranted due to the:</u>

A) Fundamental claims at stake for review;

B) Exceptional circumstances and a miscarriage of justice;

C) Appellant is rendered ineffective on his own in prison; as intentionally engineered to deny his redress/remedy;

D) The trial court lacked the jurisdiction to imprison (upstream) after they divested themselves of their power;

E) Appellant has served more than legitimate time in prison;

F) Respondents continually obstruct due process of law from the confines of their federal prisons;

G) The "Great" writ of habeas corpus has proven ineffective and inadequate and rightfully been suspended as supported

    by an extensive record;

H) Law and equity;

I) Governmental overreaching [trial transcript];

J) Appellant's "innocence" [trial transcript];

K) Double Jeopardy (Collateral Estoppal) [transcript];

L) Denial of a Speedy Trial (30-day clock) [transcript];

M) Denial of counsel and due process at trial, sentencing, and all critical stages engineered by the FBI;

N) Granting of signature bond prior to imprisonment;

O) Neither a "danger to the community" nor a "flight risk" according to trial judge prior to imprisonment ["Nothing but a good reputation in the community" (IRS)];

P) Fraud in trial court and court of appeals so as to perfect conviction, judgment, and affirmance;

Q) Counsel abandonment of direct appeal, trial and all critical stages, in three cases, tax case(s), drug case, and forfeiture, plus others.

    Based on the foregoing, and an extensive record, <u>de novo</u> release from imprisonment is warranted, unconditionally. In the least, release on his signature or a <u>fair</u> hearing. This as a matter of law, common sense, the furtherance of justice and the remaining integrity of the process. <u>See</u> **<u>EXHIBIT A</u>**.

Dated: *March 19, 2004*

*Certification of Mailing:*
*E.A.*

Affirmed, declared and certified true and correct under penalty of perjury with all unalienable Rights, Powers, Privileges and Immunities invoked and reserved and without prejudice.

*Frederick W. Bauer* (signature)

Frederick W. Bauer
FCI-Waseca, #02706-090
1000 University Drive SW
Waseca, Minnesota 56093
(507) 835-8972
       837-4547 Fax

LOCAL COMMENTARY

# The government forsakes justice to protect its own

*Detroit Free Press*

Several people who watched and read about the congressional hearing on the siege of the David Koresh compound in Waco, Texas, expressed their surprise about the reported lies and improprieties by the federal agents who participated.

This is nothing new. I have seen this kind of thing taking place for years, not only in official investigations, but in the courts as well. I wrote a column several months ago about how the FBI lies and takes part in cover-ups involving police corruption in Porter County.

I have since learned that the FBI agent who I believe has been involved in cover-up activities involving police corruption reported my article to the U.S. Department of Justice in Washington. How refreshing it is to know that big brother is watching your every move!

I was under the impression that citizens had the right to freely express themselves guaranteed under the First Amendment. Apparently that right is going by the wayside. I had no idea that the FBI and the U.S. Department of Justice were so interested in my public writings. I wonder what they will do when I write a book? I can only hope that the same agents who took part at Waco do not show up at my house. I guess governmental authorities get a little upset when they see that someone is willing to inform the public about what is really going on.

The FBI well knows that I have a great deal of information about their improprieties. I have accompanied a former undercover police officer, who was interested in reporting evidence of police corruption in Porter County, to the U.S. Attorney's Office in Hammond. Unfortunately, the U.S. Attorney's Office would not let him file his report. The former officer even had a tape recording of police officers discussing their intentions of violating certain people's rights in Porter County. It seems funny that the U.S. Attorney's Office would turn away such evidence.

I have seen federal judges in Hammond allow the police to commit perjury in the courtroom so that police will be able to escape responsibility for their wrongful and unlawful actions. I have seen a judge disallow a tape recording that would prove that the police lied at trial.

Unfortunately for the public, this is how the system works, and it is no accident. Government officials know exactly what they are doing and how to get away with things. And they know that when things go wrong and start looking bad, there will always be another government



official higher up on the ladder who will take care of things.

No, I do not need to watch the Waco hearings to learn about corruption in our government. I can see plenty of it right here. It's just too bad that government officials aren't willing to abide by the same standards it expects from its citizens.

While I share the feeling of many people around the country that we will be much better off without David Koresh, I do not believe that the government is standing on high moral ground by its actions of needlessly killing many young children, who were just helpless pawns, at Waco.

After all, we have a government with the highest technological capabilities, a government that is able to send commando troops to rescue hostages all around the world in the most dangerous and hostile environments. It did not have to resort to what it did at Waco.

While federal law makes it clear that our government is forbidden to use federal troops against its own citizens, our government officials have once again walked over the line and thumbed its nose at the laws it swore to uphold. Perhaps these overhungry zealots feel that they did a macho thing by killing children.

Who will be next? One thing I believe is certain — and I hope that I am wrong — is that not a single government official from the Waco incident who has been proven to have lied or broken any rules or laws will face indictment or lose his job as the ordinary person would. Why? The answer is very simple. History shows that there is a much different standard for government officials, and society puts up with it.

Why does society put up with it even though it doesn't like it? The answer is again very simple. Government protects its own at all costs. While we saw certain politicians trying to make themselves look good during the Waco hearings, I do not believe that there will be a single indictment against a single government official even though the hearings showed evidence of lying and official wrongdoing by several government officials.

What we are really seeing is the game of politics being played at its very best (or worst).

Ex V14

EXHIBIT B

Page